# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**United States of America**

        *Plaintiff*,

**v.**                                                                  **Case No. 3:19-cr-016**
                                                                    **Judge Thomas M. Rose**

**Shawn Williams,**

        *Defendant*.

---

### ENTRY AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS. (ECF 15).

---

Pending before the Court is a motion to suppress filed by Defendant Shawn Williams. ECF 15. The motion requests an order suppressing evidence seized from his person, in addition to any statements he made. Williams asserts that the evidence seized and statements that he made were obtained in violation of his Fourth and Fifth Amendment rights guaranteed by the United States Constitution.

**Background**

On January 7, 2019, at 3:20 p.m., Dayton Police detectives Dustin Phillips and Jason Rhodes were working undercover in the area of James H. McGee and U.S. 35, when they observed a white male driving a white pickup truck talking on his cell phone. Tr. at 9, 13. This individual peaked their interest as he was looking around as he spoke – "looking for street signs and things of that nature." Id. The officers decided to surveil this individual. Id. at 10. They followed the vehicle to the Dayton View neighborhood and observed it stop and interact with a black Jeep on

Kumler Avenue. Id. at 11. The white pick-up truck and the Jeep were "driver-door to driver-door for a couple seconds" before they both departed the area, going in separate directions. Id. The officers concluded that the vehicles had engaged in a drug transaction and decided to pursue the black Jeep, which they believed to have excessive window tint. They called for a marked cruiser to make a traffic stop. Id. at 13-14, 16. As they waited for a marked cruiser, the officers followed the Jeep and observed it pull over and stop in front of a residence on Kipling. Id. at 17, 20, 21. As Rhodes followed the Jeep, it began driving erratically, drastically changing its speed and rolling through stop signs. (Id. at 67.) Rhodes concluded the Jeep's driver was attempting to determine if he was being followed, which Rhodes knows to be a common trafficker countermeasure. (Id.). Rhodes decided to stop the Jeep based on the traffic violations and potential drug deal that he observed, but briefly lost sight of the Jeep. (Id. at 65, 68-69.)

The detectives maneuvered around the neighborhood and saw that the Jeep was now parked on the wrong side of the street in front of 1955 Kipling. Id. at 69-70. Rhodes saw a male ultimately identified as Terrence Tyler exit the driver's side of the Jeep, and saw Defendant Shawn Williams standing in the street and in front of the Jeep. Id. at 69, 71-73. They were the only individuals in the immediate vicinity of the Jeep. Id. at 85.

Wearing "police" vests, and with guns drawn, the officers ordered Tyler to the ground and approached him, when they found a gun on his person. Id. at 21-23. As Tyler exited the Jeep, the officers also observed Williams walking in front of the Jeep and up a driveway at 1958 Kipling. Id. at 20, 21, 23, 32. Neither Phillips nor Rhodes observed Williams exit Tyler's vehicle or engage in any illegal activity, nonetheless, they ordered him to stop and approached him to search his person. Id. at 23, 31, 35-36.

The officers justified their actions pointing to Williams' association with Tyler, which was based on: "we saw Tyler get out and walk towards the back of the Jeep and we saw Williams directly in front of the Jeep. So it appeared that there was an association due to him being in that area at the same time and walking away from said Jeep and Tyler once we began to make contact with Tyler. So I guess what I'm trying to say is there was really no other reason for him to be right there than to be with him, it appeared to us, at that time." Id. at 34. Once the officers began the pat-down process, Williams notified them that he possessed a firearm on his person. Id. at 24. Upon learning this information, Rhodes located and removed the firearm from Williams' pocket, arrested him and placed him in a cruiser. Id. at 25. In the cruiser after *Mirandizing* Williams, the officers elicited incriminating statements from him regarding the firearm. Id. at 27.

On January 9, 2019, a complaint was filed alleging that Williams violated 8 U.S.C. § 922 (g)(1) by possessing a firearm after having been previously convicted of a felony offense. On March 8, 2019, Williams moved the Court to suppress any evidence seized from his person and statements he made in police custody. ECF 15.

**Analysis**

Williams protests that the search of his person was unconstitutional. A police officer "can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1969)) (internal quotation omitted). Reasonable suspicion is based on the "totality of the circumstances," and requires the officer to have a "particularized and objective basis" for suspecting criminal activity. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal citation omitted). Courts

review the facts giving rise to reasonable suspicion collectively, and not independently as part of a "divide and conquer analysis." Id. at 274. Reasonable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence," but more than "inchoate and unparticularized suspicion or hunch of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123- 24 (1990) (internal citations and quotation omitted). Courts recognize that officers "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Arvizu*, 534 U.S. at 273. Even a series of behaviors that might appear independently innocent may collectively combine to provide reasonable suspicion. Id. at 274.

In order to conduct a frisk, an officer must have reasonable suspicion a suspect may be armed. *United States v. Pacheco*, 841 F.3d 384, 390 (6th Cir. 2016) (citing *Knowles v. Iowa*, 525 U.S. 113, 118 (1998)). A totality of the circumstances test is likewise applied to determine whether the officer had reasonable suspicion to believe that a suspect was armed, in other words "whether 'a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger.'" Id. (internal citation omitted)

Here, Rhodes had reasonable suspicion that a drug deal was afoot and a drug deal lends reasonable suspicion that a suspect is armed. He saw that the truck was from outside the county, consistent with drug buyers from outside Dayton who come to Dayton to buy drugs. Likewise, consistent with a buyer being guided by a trafficker, the truck driver made several phone calls while appearing to look for street signs. Consistent with a car-to-car deal, the interaction between the Jeep and truck was extremely brief. The Jeep was heavily tinted. The Jeep ran stop signs and radically changed speeds once Rhodes followed it. Rhodes found the Jeep parked the wrong

4

way in front of 1955 Kipling, which Rhodes identified as consistent with flight; prior to frisking Williams, Rhodes found a concealed firearm, a drug trafficking tool, on Tyler.

Next, Rhodes saw Williams, who was standing in front of the Jeep that had effectively fled and was parked the wrong way, and he and Tyler were the only people in the immediate area of the Jeep. Rhodes was unsure whether or not Williams was one of the Jeep occupants due its window tint. Regardless of whether Williams was an occupant, it was reasonable for Rhodes to suspect Williams may be connected to the potential criminal activity, whether as an abettor disposing of items or as an assistant in the flight of the driver from police. See *United States v. Hoard*, 12 F.3d 1101, *3-4 (7th Cir. 1993) ("reasonable law enforcement officers could draw the inference that Hoard was somehow a confederate of those persons"); see also *United States v. Brown*, 398 F. App'x 865, 868 (4th Cir. 2010). In sum, while Rhodes may not have had probable cause, he had reasonable suspicion to do a stop and a frisk.

Reasonable suspicion is a low threshold. Rhodes' testimony provided a particularized and objective basis to believe criminal activity was occurring and that Williams may be involved. As such, the totality of the circumstances provided Rhodes reasonable suspicion sufficient to stop Williams. Likewise, there was reasonable suspicion to believe Williams was armed, which justified Rhodes' frisk. Because the stop and frisk were proper, the Court will deny Williams' motion to suppress.

**Conclusion**

The police, having only briefly having lost sight of the truck they were following, had reasonable suspicion to stop and frisk the occupants and had reason to suspect Williams may have

been an occupant or associated with the occupants.  For this reason, Defendant's Motion to

Suppress, ECF 22, is **DENIED.**[1]

       **DONE** and **ORDERED** in Dayton, Ohio, this Monday, September 9, 2019.


                                        s/Thomas M. Rose

                                        THOMAS M. ROSE
                           UNITED STATES DISTRICT JUDGE

---

1 Williams referred to unlawful entry and failure to *Mirandize* in his request for a hearing, but did not refer to these basis in his post-hearing memorandum in support. *Aarti Hospitality, LLC v. City of Grove City, Ohio*, 350 F. App'x 1, 14 (6th Cir. 2009) ("Our law is well-settled that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")